UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMUEL PEARSON,

                Petitioner,

                                                  Case No. 08-14422
v.                                                     Honorable David M. Lawson

RAYMOND BOOKER,

                Respondent.
_____/

**OPINION AND ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Samuel Pearson, a Michigan prisoner, has filed a *pro se* petition for a writ of habeas corpus under to 28 U.S.C. § 2254 alleging that he is incarcerated in violation of his constitutional rights. The petitioner was convicted of assault with intent to murder following a jury trial in the Oakland County Circuit Court in 1994 and was sentenced to life imprisonment. In his amended petition, the petitioner raises 27 claims concerning state court limitations on the filings and rejections of pleadings, the denial of oral argument, discovery abuses, the denial of DNA testing, speedy trial, newly-discovered and excluded evidence, the admission of other acts evidence, prosecutorial misconduct, the police investigation, a limitation on cross-examination, a trial stipulation, judicial bias, the layout of the courtroom, the effectiveness of trial and appellate counsel, transcription error, his willingness to take a polygraph examination, an in-chambers conference, the validity of his sentence, cumulative error, the validity of certain state court rules, and substantive due process. The respondent has filed an answer to the petition contending that it should be dismissed as untimely under the one-year statute of limitations applicable to federal habeas actions. *See* 28 U.S.C. § 2244(d)(1). The Court concludes that the petition is untimely and cannot be saved by the doctrine of equitable tolling. The Court, therefore, will dismiss the petition.

I.

The petitioner's conviction arises from an assault upon his estranged wife, Linda Scott Pearson, at her home in Hazel Park, Michigan on October 20, 1985. The state court record reveals that he entered the home during the early morning hours and struck her with a hammer while she slept. The petitioner was not charged with the assault until 1994 after he made incriminating statements to several people about his involvement in the crime.

At trial, Linda Scott testified that she had been married to the petitioner for several years, but she had filed for divorce and he had moved out of their home several months before the assault. On the afternoon of October 19, 1985, the petitioner worked in their garage and picked up their children for the evening. Scott went to a bar and stayed until closing. She returned home and went to bed around 3:00 a.m. When she awoke, she felt sick, disoriented, and cold. She went to her bathroom, looked in the mirror, and saw that she was bloody and bruised. She eventually telephoned her neighbor, Judy Grimsley, for help. Grimsley came to her house and called 911. Firefighters and police responded to the scene. They observed vomit and lots of blood on the bed and in the bedroom. They found a baseball cap with blood on it in the room and smaller amounts of blood in other areas of the house. The police also noticed that a window screen was missing from one room and that a ladder was leaning against the house.

Scott did not know what had happened and could not identify her assailant. She was taken to the hospital where she underwent surgery and remained for several days. A doctor testified about Scott's injuries and treatment. When Scott returned home, her house had been cleaned and the only thing missing was her car, which was recovered from a parking lot in Warren. A few days after

returning home, Scott noticed blood on a window at the top of her stairs and saw that the storm window had been removed and placed in the house.

Scott testified that she talked to the petitioner about the assault several times over the years and that his responses changed over time. He first said that he did not know who did it, then said a friend did it for him as a favor, then said he hired someone to do it, and finally said that he entered the house through an upstairs window and did it himself with a hammer.

Judy Grimsley testified about helping Scott after the assault. Grimsley also testified that she spoke to the petitioner about the assault several weeks later. The petitioner told her that he and Scott were getting divorced and having problems. He also told her that a friend owed him money, and jokingly said that he told his friend that he would clear the debt if he took care of his wife. Grimsley did not think the petitioner was serious at the time.

Judy Grimsley's daughter, Cindy Burkeen, testified that she followed her mother to Scott's home after the assault. Scott was unconscious and very bloody. Burkeen saw blood throughout the bedroom and in other spots in the house, but nothing else appeared to be disturbed. She noticed blood on an upstairs window and recalled seeing a ladder in the driveway. A few months later, Burkeen spoke to the petitioner about the incident. He initially told her that he did not know anything, but subsequently said that Scott was asking for too much money in the divorce and he wanted custody of their children so he had someone do it to repay him for a debt. He later told Burkeen that he was in the house when the assault occurred, but did not say that he did it.

The petitioner's son, Aaron Scott, testified that the petitioner was at their house the day before the assault and fixed an upstairs window at that time.

Eugene Masternak testified that he knew the petitioner from high school, lived in the area, and knew about the assault when it occurred. Masternak also worked for the petitioner in his towing business from May to July in 1993. According to Masternak, they talked about the assault in July, 1993 and the petitioner told him that he dressed in black and beat his wife with a hammer after reading a letter about an affair. The petitioner said that he jimmied a window to make it look like the assailant entered the house that way. The petitioner said that the police were trying to accuse him of the assault but could not because too much time had passed. The petitioner also said that he told Anna Warwick about the assault. Masternak contacted the police in September 1993. Masternak said that he was shot three weeks later while sitting in his car in Detroit, Michigan. Masternak admitted that he and the petitioner had disagreements about work, a stolen car, a stolen gun, and other property at that time.

Anna Warwick testified that she met the petitioner in a bar in May 1993 and learned that he was divorced with two children. The petitioner told her that he thought his ex-wife had an affair and that she had been beaten. The petitioner said that the police had questioned him about the assault but did not have evidence against him and let him go. Warwick dated the petitioner for about four weeks. When she talked to him about ending their relationship, he said that he wanted to be with her and wanted to tell her the truth. He then told her that he beat his ex-wife with a hammer while she was sleeping, that he left her for dead, and that he wished she would have died. Warwick contacted the police in September 1993.

The parties stipulated that two witnesses, Debra Durbin and Darcene Brackney, would testify that they had never seen the petitioner wearing the baseball cap found at the scene. The parties also stipulated that Scott's father, Clarence Musson, would testify that a woman named Darcy lived down

the street and she hated Scott and the petitioner. Lastly, the parties stipulated that the petitioner consented to a search of his home on October 21, 1985, the police took a pair of pants, and those pants were tested by the crime lab and returned to him.

The petitioner did not testify at trial. His defense was that he did not commit the assault and that whoever did so lacked the intent to kill the victim. At the close of trial, the jury convicted the petitioner of assault with intent to commit murder. The trial court subsequently sentenced him to life imprisonment.

Following sentencing, the petitioner filed a direct appeal in the Michigan Court of Appeals raising claims concerning the effectiveness of trial counsel, the jury instructions, the admission of certain testimony, the validity of his sentence, and the sufficiency of the evidence. The court denied relief on those claims and affirmed his conviction. *People v. Pearson*, No. 179808, 1996 WL 33364186 (Mich. Ct. App. May 28, 1996) (unpublished). The Michigan Supreme Court denied leave to appeal, *People v. Pearson*, 454 Mich. 898, 564 N.W.2d 42 (1997), and denied reconsideration, *People v. Pearson*, 454 Mich. 898, 568 N.W.2d 85 (1997).

While his appeal was ongoing, the petitioner filed motions for the production of documents in the trial court, the last of which appears to have been denied in October 2000. The petitioner then filed a delayed application for leave to appeal in the Michigan Court of Appeals, which was denied. *People v. Pearson*, No. 231412 (Mich. Ct. App. May 16, 2001) (unpublished). The Michigan Supreme Court denied leave to appeal. *People v. Pearson*, 465 Mich. 894, 635 N.W.2d 321 (2001).

The petitioner began filing additional letters, requests, and motions in the state trial court starting in June 2005 and continuing until January 2007. He appears to have filed several motions for relief from judgment during that time period, all of which were denied without prejudice for

failing to comply with filing requirements. The trial court denied his last 220-page motion on January 30, 2007 finding that it exceeded the 50-page limitation established by the Michigan Court Rules. The court denied the petitioner's motion to exceed the page limit and instructed him to re-submit a motion and brief not to exceed 50 pages. It does not appear from the record before this Court that he did so. Rather, the petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals, which was denied. *People v. Pearson*, No. 279654 (Mich. Ct. App. March 14, 2008) (unpublished). The Michigan Supreme Court thereafter denied leave to appeal, *People v. Pearson*, 482 Mich. 988, 755 N.W.2d 642 (2008), and denied reconsideration, *People v. Pearson*, 483 Mich. 883, 759 N.W.2d 371 (2009).

The petitioner signed his initial habeas petition on September 25, 2008, and it was filed by the Court on October 17, 2008. On October 28, 2008, the Court issued an order holding the petition in abeyance and administratively closing the case pending the resolution of the petitioner's motion for reconsideration in the Michigan Supreme Court. The petitioner subsequently moved to re-open the case and submitted an amended petition dated February 23, 2009. The Court granted his motion and re-opened the case on March 9, 2009.

The respondent has filed an answer to the amended petition contending that it should be dismissed as untimely under the one-year statute of limitations applicable to federal habeas actions. The petitioner has filed a reply to that answer asserting that the one-year period should be tolled and that he is actually innocent.

II.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, became effective on April 24, 1996 and governs the filing date for the habeas application in this case because the petitioner filed his petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA amended 28 U.S.C. § 2244 to include a new, one-year period of limitations for habeas petitions brought by prisoners challenging state court judgments. *See Vroman v. Brigano*, 346 F.3d 598, 601 (6th Cir. 2003). The one-year statute of limitations runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). A habeas petition filed outside the time period prescribed by this section must be dismissed. *See Isham v. Randle*, 226 F.3d 691, 694-95 (6th Cir. 2000) (case filed 13 days after the limitations period expired dismissed for failure to comply); *Wilson v. Birkett*, 192 F. Supp. 2d 763, 765 (E.D. Mich. 2002).

The petitioner's conviction became final after the AEDPA's April 24, 1996 effective date. The Michigan Supreme Court denied leave to appeal in his direct appeal on July 25, 1997. His conviction became final 90 days later , on October 23, 1997. *See Jimenez v. Quarterman*, 555

U.S.113, 119 (2009); *Lawrence v. Florida*, 549 U.S. 327, 333 (2007); *Sherwood v. Preslesnik*, 579 F.3d 581, 585 (6th Cir. 2009); S. Ct. R. 13(1). Therefore, the petitioner was required to file his habeas petition on or before October 24, 1998, excluding any time during which a properly filed application for state post-conviction or collateral review was pending in accordance with 28 U.S.C. § 2244(d)(2).

The petitioner filed motions in the trial court during the pendency of his direct appeal and pursued related appeals until October 29, 2001. Assuming, without deciding, that those proceedings tolled the one-year period, the limitations period began to run on October 30, 2001 and ended one year later, on or about October 30, 2002. The petitioner did not begin filing his subsequent state court letters, requests, and motions for relief from judgment until June 2005. Therefore, the one-year period expired well before the petitioner sought further state post-conviction or collateral review.

A state court post-conviction motion that is filed following the expiration of the limitations period cannot toll that period because there is no time remaining to be tolled. *See Hargrove v. Brigano*, 300 F.3d 717, 718 n.1 (6th Cir. 2002); *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000); *see also Jurado v. Burt*, 337 F.3d 638, 641 (6th Cir. 2003). The AEDPA's limitations period is only tolled while a prisoner has a properly filed motion for post-conviction or collateral review under consideration. *See* 28 U.S.C. § 2244(d)(2); *Hudson v. Jones*, 35 F. Supp. 2d 986, 988 (E.D. Mich. 1999). The AEDPA's limitations period does not begin to run anew after the completion of state post-conviction proceedings. *See Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001). His petition for writ of habeas corpus, therefore, is untimely.

The petitioner does not contend that his claims are based upon newly-created rights recognized by the United States Supreme Court and made retroactive to cases on collateral review. Rather, he asserts that it took him "longstanding years" to accumulate his exhibits, particularly due to his incarceration, and he alleges that his claims are based upon newly-discovered facts. The petitioner, however, has not alleged facts that show that the State created an impediment to the filing of his petition. Typical conditions of prison life do not constitute sufficient circumstances that justify tolling of the one-year period. *See Maclin v. Robinson*, 74 F. App'x 587, 589 (6th Cir. 2003) (limited access to prison law library does not constitute a state impediment under 28 U.S.C. § 2244(d)(1)(B)); *see also United States v. Stone*, 68 F. App'x 563, 565 (6th Cir. 2003) (allegations of insufficient library access do not warrant equitable tolling); *Grayson v. Grayson*, 185 F. Supp. 2d 747, 751 (E.D. Mich. 2002) (denial of access to legal materials is not an exceptional circumstance warranting equitable tolling). The petitioner has not shown that any perceived state impediment persisted throughout the relevant time period or that unusual or exceptional prison conditions prevented him from filing his petition in a timely manner.

The petitioner also has not established that his habeas claims are based upon newly-discovered facts. Under 28 U.S.C. § 2244(d)(1)(D), the limitations period begins when the factual predicate for the claim could have been discovered through the exercise of due diligence, not when it was actually discovered by the petitioner. *See Lott v. Coyle*, 261 F.3d 594, 605-06 (6th Cir. 2006); *Brooks v. McKee*, 307 F. Supp. 2d 902, 905-06 (E.D. Mich. 2004) (citing cases). The period commences when the petitioner knows or could have discovered the important facts for the claim, not when the petitioner recognizes the legal significance of those facts. *Brooks*, 307 F. Supp. 2d at 905-06. The start of the limitations period "does not await the collection of evidence which supports

the facts." *Id*. at 906.  A habeas petitioner bears the burden of showing that he exercised due diligence in discovering the factual predicate for his claims.  *DiCenzi v. Rose*, 452 F.3d 465, 471 (6th Cir. 2006); *Lott*, 261 F.3d at 605-06.

The petitioner lists the following items as newly-discovered:  (1) an affidavit from Melrose Earl dated April 15, 2004 regarding the petitioner and Eugene Masternak; (2) a letter written by the petitioner's daughter to him in November 1997 that has comments about her mother's former boyfriend, a man named Virgil; (3) police files that are not redacted; (4) forensic evidence from the victim and the crime scene; (5) eight fingerprints from the victim's home; and (6) forensic tests from the petitioner and his clothing.  The petitioner, however, has not shown that these items are "newly-discovered" for purposes of tolling the one-year period.

As to Melrose Earl's affidavit, the petitioner has neither alleged nor established when Earl was willing to prepare an affidavit.  The petitioner therefore has failed to establish that he acted with reasonable diligence in discovering the information or obtaining this affidavit.  *See, e.g., Deloney v. McCann*, 229 F. App'x 419, 422 (7th Cir. 2007) (ruling that limitations period began when the petitioner became aware of relevant facts not when he obtained supporting evidence); *Webb v. Bell*, No. 07-12689, 2008 WL 2242616, *5 (E.D. Mich. May 30, 2008) (stating that date of notarized affidavit merely informs the court when it was signed, not when the witness recanted his testimony or whether the petitioner exercised due diligence); *Ajamu-Osagboro v. Patrick*, 620 F. Supp. 2d 701, 711-12 (E.D. Pa. 2009) (holding that the limitations period began to run when witness's sister contacted the petitioner and informed him that witness was willing to recant); *see also Fama v. Commissioner of Corr. Svs.*, 235 F.3d 804, 816 n.10 (2d Cir. 2000) (affidavit was not newly-discovered when signed in 1997 because the petitioner learned of the relevant information in 1995).

Furthermore, Melrose Earl is someone whom the petitioner met in prison and the affidavit merely relates the petitioner's own statements to Melrose about Masternak and offers information about a shooting of Masternak, not the instant offense. The petitioner was aware of such events when they occurred.

As to his daughter's letter, the petitioner knew about that letter when it was written in 1997 and could have been aware of the underlying allegations about Virgil with reasonable diligence even before that time.

As to the police reports, the petitioner fails to offer any evidence of "sanitized" police reports, nor has he shown that unredacted reports were unavailable at the time of his trial or appeal, or could not have been discovered with reasonable diligence prior to the expiration of the one-year period. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (stating that bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in habeas proceedings).

With regard to the forensic evidence from the victim, the petitioner, and the crime scene, the petitioner was aware before trial that such testing had been conducted. Those materials were available at the time of his trial and appeal or could have been discovered with reasonable diligence within the relevant time period. Therefore the petitioner knew or should have known of the basis for his claims well before the expiration of the one-year period. His petition is therefore untimely under 28 U.S.C. § 2244(d).

The United States Supreme Court has confirmed that the one-year statute of limitations is not a jurisdictional bar and is subject to equitable tolling. *See Holland v. Florida*, --- U.S.---, 130 S. Ct. 2549, 2560 (2010). But the Supreme Court has cautioned that a habeas petitioner is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Griffin v. Rogers*, 308 F.3d 647, 652 (6th Cir. 2002). A petitioner has the burden of demonstrating that he is entitled to equitable tolling. *See Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004); *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). "Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Jurado*, 337 F.3d at 642 (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000)).

The petitioner does not assert that he is entitled to equitable tolling under the *Dunlap* factors. The fact that he is untrained in the law, may have been proceeding without a lawyer or other legal assistance, or may have been unaware of the statute of limitations for a period of time does not warrant tolling. *See Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) (holding that ignorance of the law does not justify tolling); *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999) (holding that "ignorance of the law, even for an incarcerated *pro se* petitioner" does not excuse late filing); *Holloway v. Jones*, 166 F. Supp. 2d 1185, 1189 (E.D. Mich. 2001) (holding that lack of professional legal assistance does not justify tolling). Additionally, because the petitioner's conviction became final in 1997 and he did not attempt to file his state court motion for relief from judgment until 2005,

it cannot be said that he diligently pursued his claims. The petitioner is not entitled to equitable tolling under *Dunlap*.

The Sixth Circuit also has held that a credible claim of actual innocence may equitably toll the one-year limitations period. *See Souter v. Jones*, 395 F.3d 577, 588-90 (6th Cir. 2005); *see also Knickerbocker v. Wolfenbarger*, 212 F. App'x 426, 431-32 (6th Cir. 2007); *Holloway,* 166 F. Supp. 2d at 1190. As explained in *Souter,* to support a claim of actual innocence, a petitioner in a collateral proceeding "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)). A valid claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324. Furthermore, actual innocence means "factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623.

The petitioner has made no such showing. The affidavits and exhibits submitted with his petition do not establish that he is innocent of the crime. Rather, they tend to challenge the credibility of various witnesses and their motives for testifying at trial. Furthermore, the affidavits are neither new nor particularly reliable, since they are from the petitioner's family members and friends. Even the forensic materials cited by the petitioner are not new and do not exonerate him. They merely indicate that scientific testing could not positively identify him as the perpetrator. Contrary to the petitioner's assertions, such testing did not rule him out as the perpetrator. The victim and multiple witnesses testified that the petitioner made incriminating statements about

committing the crime. The petitioner has not shown that it is more likely than not that no reasonable juror would have convicted him upon consideration of the materials submitted with his petition.

Additionally, the petitioner's own self-serving assertions of innocence are insufficient to support his actual innocence claim. "A reasonable juror surely could discount [a petitioner's] own testimony in support of his own cause." *McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007). This is particularly true since he did not testify at trial. *See Knickerbocker*, 212 F. App'x at 433 (noting that a habeas petitioner's polygraph evidence was not persuasive evidence of actual innocence, in part, because he did not testify at trial). Lastly, the petitioner's contention that his habeas claims have merit does not justify tolling the limitations period. *See Holloway*, 166 F. Supp. 2d at 1191. The petitioner has failed to demonstrate that he is entitled to equitable tolling of the one-year period. His petition is therefore untimely and must be dismissed.

### III.

The Court finds that the petition for a writ of habeas corpus was not filed within the time permitted by 28 U.S.C. § 2244(d). The Court further finds that the petitioner has not established that he is entitled to statutory or equitable tolling of the one-year limitations period. The Court, therefore, will dismiss the habeas petition as untimely.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE**.

                                                <u>s/David M. Lawson</u>
                                                DAVID M. LAWSON
                                                United States District Judge

Dated:  August 11, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 11, 2011.

                                        s/Deborah R. Tofil
                                        DEBORAH R. TOFIL